1318

UNITED STATES FIDELITY & GUARANTY COMPANY, Respondent
vs. O. L. COLLINS, Appellant.

(378 S. E. (2d) 821)

Court of Appeals

*William H. Burkhalter, Jr.*, North Augusta, and *C. Lavaun Fox*, Aiken, *for appellant.*

*Richard R. Merhof, Jr.*, Augusta, Ga., *for respondent.*

Heard Feb. 20, 1989.

Decided March 30, 1989.

GOOLSBY, Judge:

The respondent United States Fidelity & Guaranty Company (USF & G) brought this action against the appellant O. L. Collins in his individual capacity to recover attorney fees and bond premiums. The trial court granted USF & G summary judgment, awarding it attorney fees and an amount representing bond premiums. Collins appeals. We affirm in part, reverse in part, and remand.

In 1982, the Probate Court of Richmond County, Georgia appointed Collins, a South Carolina resident and Georgia attorney, and Mildred Siderman, a North Carolina resident, co-guardians of the person and property of Fred Tyzzer, a mental incompetent. At the time of their appointment, Tyzzer resided in Georgia in a veteran's hospital but was domiciled and owned property in North Carolina. Collins and Siderman both executed a guardian bond with USF & G.

Sometime after his appointment as co-guardian, Collins filed suit in Georgia in his capacity as co-guardian against Siderman and USF & G. A federal district court later dismissed Collins' action.

Afterward, USF & G brought the instant action in South Carolina seeking to recover from Collins the attorney fees USF & G allegedly incurred in defending the Georgia action and the bond premiums Collins allegedly failed to pay for the years 1982 through 1986. Relying on Section 10-7-41 of the Official Code of Georgia Annotated (1982) and on principles of common law subrogation, the trial court granted USF & G summary judgment against Collins, awarding USF & G $6,459.40 in attorney fees and $1,688 in bond premiums. The trial court expressly refused to address USF & G's contention that the bond application, about which there is a factual dispute, authorized it to recover attorney fees for having to defend Collins' action.

The parties agree Georgia law controls the outcome of this case.

## I.

### A.

We discuss first Section 10-7-41, the first ground on which the trial court based Collins' liability for payment of USF & G's attorney fees.

Section 10-7-41 provides:

*Payment by a surety ... of a debt past due* shall entitle him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of his principal [Emphasis added.]

The plain language of the statute requires, as a pre-requisite to recovery by the surety from the principal of "all legal costs to which [the surety] may have been subjected by the default of [the] principal," that the surety first pay "a debt [that is] past due." It is the surety's payment of a past due debt of the principal, then, that triggers the surety's right under the statute to "proceed immediately against [the] principal for the sum paid ... and all legal costs [incurred]."

In the instant case, however, there was no "past due" debt of Collins discharged by USF & G; therefore, the statute affords USF & G no basis upon which to recover against Collins "as legal costs" the attorney fees USF & G incurred in defending the action brought by Collins against it and Siderman.

Indeed, USF & G has not directed our attention to any Georgia case in which the incurring of attorney fees by a surety in the defense of an action brought by the principal has been held sufficient, by itself, to satisfy the "payment of a past due debt" requirement of Section 10-7-41. *Cf.* 74 Am. Jur. (2d) *Suretyship* § 199 at 135 (1974) ("Under a statute or contract which presupposes, as a condition to the surety's right of reimbursement, the existence of a legal obligation against the principal due to his default or neglect, it is held that a surety who successfully defends an action on the

bond, so that the principal is absolved from all liability thereon, is not entitled to recovery from his principal, who was not a party to the action, the expenses incurred in defeating the action.").

### B.

The trial court, as we noted, also found USF & G entitled to recover based on principles of common law subrogation. We fail to see, however, how these principles are applicable here.

The term "subrogation" is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." 83 C. J. S. *Subrogation* § 1 at 575 (1953); *see also Southern Ry. Co. v. Malone Freight Lines,* 174 Ga. App. 405, 330 S. E. (2d) 371 (1985) (the purpose of subrogation is to substitute one person in place of another so that the substituted party may exercise rights of the original creditor).

In this case, there has been no "substitution" of USF & G "in the place of a creditor." USF & G has paid no debt on behalf of Collins to any of his creditors. *See United States Casualty Co. v. Peachtree Roxboro Corp.,* 103 Ga. App. 532, 120 S. E. (2d) 161 (1961) (legal subrogation seeks the equitable substitution of the plaintiff to the rights of the creditor whose debt has been paid). The debt USF & G paid was its own.

In finding USF & G entitled to reimbursement from Collins for the amount of its attorney fees incurred in the earlier action, the trial court relied on two cases, *Flemister v. United Bonding Insurance Company,* 122 Ga. App. 422, 177 S. E. (2d) 182 (1970) and *United Rentals Systems v. Safeco Insurance Co.,* 156 Ga. App. 63, 273 S. E. (2d) 868 (1980). Both of these cases, however, involve express indemnity agreements. Here, the question of whether there was such an indemnity agreement, tied as it is to the controversy concerning the bond application, is in dispute and was left unresolved by the trial court.

We are aware that the law recognizes an implied promise on behalf of a principal to idemnify his surety for losses sustained by the surety in compliance with its obligations as a surety. 72 C. J. S. *Principal*

*and Surety* § 239 at 365 (1987). But since a surety is nothing more than a simple contract creditor with respect to its right to indemnity from its principal, it has no right, absent a contract or statute to the contrary, to recover costs and expenses, such as attorney fees, from the principal unless it has satisfied all or some part of the principal's obligation. *Perry v. Lockert*, 414 F. Supp. 169 (M.D. Tenn. 1976); *Pacific Indemnity Co. v. Harper*, 14 Cal. (2d) 379, 94 P. (2d) 586 (1939); 74 Am. Jur. (2d) *Suretyship* § 199 at 135 (1974). Again, we are aware of no Georgia statute that allows a simple contract creditor to recover attorney fees; and, as we mentioned, the question of whether there is a contract allowing their recovery is a matter in dispute, relating as the question does to the controversy between the parties about the bond application.

## II.

Collins also contends the trial court erred in awarding USF & G the sum of $1,688, an amount representing unpaid bond premiums.

### A.

Collins argues the effect of the district court's decision was to invalidate both the guardianship and Collins' bond, thereby relieving him of any obligation to pay the bond premiums. USF & G asserts the district court's order did not have this effect.

We find it unnecessary to address the question of whether the district court's decision effectively invalidated the guardianship and bond in question. Any invalidity in Collins' appointment as guardian would not necessarily relieve USF & G of its obligations under the bond. *See* 39 C. J. S. *Guardian & Ward* § 197 at 387 (1976) ("The invalidity of the guardian's appointment does not invalidate the bond as against the sureties thereon."); *see also* O. GA. CODE ANN. § 29-2-47 (1982) ("If the appointment of a guardian for any cause is declared void, his sureties shall nevertheless be responsible on the bond for any property which may have been received by him by virtue or reason of his appointment."). Since Collins unquestionably contracted for the bond and enjoyed its protection, he is obligated to pay the premiums therefor.

## B.

We find no merit to Collins' argument that he should not be individually liable to USF & G for the amount of the bond premiums.

Basic principles of contract law dictate that Collins is liable to USF & G for payment of the premiums due. *See* 17A C. J. S. *Contracts* § 520 at 999 (1963) ("A person signing a contract without limitation is liable thereon and is the party to be made defendant in an action on the contract."); *First National Bank and Trust Co. In Macon v. Roberts*, 187 Ga. 472, 472, 1 S. E. (2d) 12, 16 (1939) ("[T]he action on a contract, ... shall be brought ... against the party who made it in person or by agent."); *Saul v. Southern Seating & Cabinet Co.*, 6 Ga. App. 843, 65 S. E. 1065 (1909) (where notes are under seal and do not disclose on their face that the signers are acting as agents for a principal, they are to be taken as the individual acts and deeds of the signers).

Section 29-2-40 of the Official Code of Georgia Annotated (1982 & Supp. 1988), a statute that authorizes a guardian who is required by law to give a bond to include the costs of bond premiums as a part of the estate administration expenses, does not afford Collins any relief. This statute does not in any way relieve the guardian of his primary responsibility as the signer of the bond for the payment of the bond premiums. *See* O. GA. CODE ANN. § 10-6-86 (1982) ("An instrument signed by one as ... guardian, ... without more, shall be the individual undertaking of the maker, except as otherwise established between the immediate parties to commercial paper. . . .").

Affirmed in part, reversed in part, and remanded.

SHAW and BELL, JJ., concur.